[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 116 
Walter Leroy Moody is charged with capital murder. His court appointed counsel sought funds to pay attorney fees, expenses, and expert fees. The trial court, following an ex parte
proceeding, directed the state comptroller to immediately pay the expenses. The comptroller refused, arguing that § 15-12-21, Ala. Code 1975, provides that such fees are to be paid only after the trial concludes.
The State petitioned for a writ of prohibition, requesting that the Court of Criminal Appeals quash all ex parte orders of the trial court that directed immediate payment of the funds. The Court of Criminal Appeals *Page 117 
granted the writ and subsequently denied rehearing.
Moody then petitioned for certiorari review, claiming that the writ of prohibition ordering the trial court to set aside the ex parte orders violated his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. We granted the petition to consider Moody's claims. Ex parteMoody, 658 So.2d 446 (Ala. 1995).
Immediately before we granted certiorari review, the trial court allowed Moody's appointed counsel to withdraw and allowed Moody to proceed pro se. Therefore, the issue whether Moody's court-appointed counsel was entitled to attorney fees, expenses, and fees for experts was found moot by this Court.
Notwithstanding those facts, the Court noted that the former attorney general had agreed to furnish to the trial court $35,000 in funds to supplement the attorney fees payable to Moody's court-appointed counsel under § 15-12-21(d), Ala. Code 1975. The former attorney general's agreement stated that providing the funds was a "one-time action, and there will be no others like it." It added: "This action in no way obligates the Attorney General to pay any amount of funds for any reason in this case or any other case. Likewise, the State is not in any way obligated to pay any funds for any purpose in this case or any other case, except to the extent specifically prescribed in [§] 15-12-21 through [§] 15-12-23. . . ."
The trial court ordered the attorney general to deposit the $35,000 with the circuit clerk's office and ordered that payment of the funds be approved by the trial court. Through numerous periodic payments, the $35,000 was withdrawn by Moody's court-appointed counsel for payment of various expenses incurred during their two years of representing Moody before they withdrew.
This Court found that Moody's argument that the failure to provide interim payment of expenses for experts violates his constitutional rights was premature. Moody, the Court held, is entitled to expert assistance only if he makes a threshold showing, approved in advance by the trial court, that expert assistance is necessary and critical for trial, in accordance with Dubose v. State, 662 So.2d 1189 (Ala. 1995), and only if he presents evidence, e.g., by affidavit, that the expert will not testify without being partially or completely compensated before he or she testifies or before the conclusion of the trial. The writ of certiorari was quashed, and no application for rehearing was filed.
Subsequently, the trial court entered an order stating, "[I]n order to remove this impasse [Moody's allegation that his experts would not work without interim payment], it is necessary for the court to exercise its inherent authority to supervise pretrial matters." The trial court appointed an attorney, similar to a special master under the Rules of Civil Procedure, to conduct an investigation on behalf of the court, and only at the direction of the court, concerning interim payment of Moody's expert witnesses.
The trial court ordered that the "special master" "shall inquire of the expert witnesses of the defendant whether they will work for the defendant, provide reports, assist in preparation of his defense, and/or testify at trial, but receive reimbursement at the conclusion of the case as is required under Alabama law." The trial court ordered the special master to locate experts other than those named by Moody, who would be willing to aid Moody and not be paid until the conclusion of the trial. The trial court also ordered that the special master conduct the investigation without participation by the State or Moody and report its findings only to the trial court. The trial court later amended its order to delete any and all requirements that the special master locate experts other than those named by Moody, who would be willing to aid Moody.
Moody then filed a petition with this Court, along with additional materials, asking (1) that "this . . . court . . . take whatever action [is] necessary to prevent petitioner from being forced to trial before the constitutional questions raised by the State's refusal to provide funds necessary for [this] indigent petitioner to provide an adequate defense [have] been resolved"; and (2) "that this Court . . . take whatever action [is] necessary for the proper Alabama court to rule on the *Page 118 
constitutional questions raised by the State's refusal to provide funds necessary to [this] indigent petitioner to prepare an adequate defense."
The issue whether Moody is entitled to certain experts and, if so, whether those experts are entitled to be paid in advance is no longer premature, based on the additional materials filed by Moody with his most recent petition. Those materials included ex parte orders entered by the trial court finding that the services of certain experts were necessary to assure the fairness of the trial. The trial court forwarded to this Court the special master's findings that 16 of the 24 expert witnesses requested by Moody had submitted affidavits stating that they would require receipt of advance payment to cover travel expenses for any trip in connection with this case and receipt of interim payment after completion of any work done in preparation for trial. Therefore, Moody complied with this Court's directions in Moody, 658 So.2d 446, and his latest petition is timely.
The issues presented in this case have prompted this Court to expressly set out what an indigent defendant is entitled to concerning expert assistance. The United States Supreme Court has stated, interpreting Fourteenth Amendment, that "justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 1093,84 L.Ed.2d 53 (1985). "There can be no equal justice where the kind of trial a man gets depends upon the amount of money he has." Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585,100 L.Ed. 891 (1956).
When an indigent defendant is involved in a criminal proceeding, the state must take certain precautions to "assure that the defendant has a fair opportunity to present his defense." Ake, 470 U.S. at 77, 105 S.Ct. at 1093. For background, we note that among these precautions is assuring that an indigent defendant has court-appointed trial counsel,Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
(1963), and court-appointed appellate counsel on direct appeal.Douglas v. California, 372 U.S. 353, 83 S.Ct. 814,9 L.Ed.2d 811 (1963). An indigent defendant is entitled to free trial transcripts on first appeal and the right to file a notice of appeal without first paying a filing fee. See Griffin v.Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956);Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209
(1959). The state must also ensure that the defendant's counsel is effective, Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In Ake v. Oklahoma, the Supreme Court held that an indigent defendant is entitled to expert psychiatric assistance at public expense. In Ake, the issue presented was whether the United States Constitution requires that an indigent defendant have access to a psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question. The Court held that the defendant was entitled to participation by a psychiatrist when psychiatric evaluation was important in preparing the defense. The relevant factors in making this determination are: (1) the private interest that will be affected by the action of the state; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of erroneous deprivation of the affected interest if those safeguards are not provided.
When the defendant is able to make a threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent. Ake. "The obligation of the State is limited to the provision of one competent psychiatrist." Ake, 470 U.S. at 79, 105 S.Ct. at 1094.
Notably, the Supreme Court stated that it was not saying that the "indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." Ake, 470 U.S. at 83, 105 S.Ct. at 1096. The Supreme Court's concern is that the indigent defendant have access to *Page 119 
a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
Although the Supreme Court has not specifically stated what "threshold showing" must be made by the indigent defendant with regard to the need for an expert, the Court refused to require the state to pay for certain experts when the indigent defendant "offered little more than undeveloped assertions that the requested assistance would be beneficial." Caldwell v.Mississippi, 472 U.S. 320 at 323, 105 S.Ct. 2633 at 2637,86 L.Ed.2d 231 (1985). As we stated in Dubose, the Supreme Court cases of Ake and Caldwell, viewed together, seem to hold that an indigent defendant must show more than a mere possibility that an expert would aid in his defense. "Rather, the defendant must show a reasonable probability that an expert would aid in his defense and [must show that] a denial of an expert to assist at trial would result in a fundamentally unfair trial."Dubose, 662 So.2d at 1192, citing Moore v. Kemp, 809 F.2d 702
(11th Cir.), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192,95 L.Ed.2d 847 (1987).
Most courts considering whether to apply Ake to nonpsychiatric experts have held that where an indigent defendant has established a substantial need for an expert, without which the fundamental fairness of the trial will be questioned, Ake requires the appointment of an expert regardless of his field of expertise, even a nonpsychiatric expert. Rey v. State, 897 S.W.2d 333 (Tex.Cr.App. 1995). "There is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." Little v. Armontrout,835 F.2d 1240 (8th Cir. 1987), cert. denied, 487 U.S. 1210,108 S.Ct. 2857, 101 L.Ed.2d 894 (1988).
Alabama Courts have extended Ake to other types of expert witnesses necessary to the defense. Dubose, 662 So.2d 1189
(defendant requested an expert on DNA); Ex parte Sanders,612 So.2d 1199 (Ala. 1993) (defendant requested ballistics expert). Again, the indigent defendant must show a reasonable probability that an expert would aid in his defense and that a denial of an expert to assist him would result in a fundamentally unfair trial. The state is not obligated to "duplicate the legal arsenal that may be privately retained by a criminal defendant . . . but only to assure the indigent defendant an adequate opportunity to present his claims fairly." Ross v. Moffitt, 417 U.S. 600, 617, 94 S.Ct. 2437,2447, 41 L.Ed.2d 341 (1974).
In Moore v. Kemp, 809 F.2d 702, 712, cited by this Court inDubose, the Eleventh Circuit Court of Appeals stated:
 "[The indigent defendant] at the very least must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense . . . he must demonstrate a substantial basis for the defense. . . . In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion because the court would not know what type of expert was needed."
Based on the foregoing, we conclude that for an indigent defendant to be entitled to expert assistance at public expense, he must show a reasonable probability that the expert would be of assistance in the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet this standard, the indigent defendant must show, with reasonable specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the state or to support a critical element of the defense. If the indigent defendant meets this standard, then the trial court can authorize the hiring of an expert at public expense.
We now address the issue whether an indigent defendant requesting an expert witness is entitled to an ex parte hearing on that request. *Page 120 
Generally, most hearings should be held in the open because of the concern that one be given notice and an opportunity to be heard. However, Congress created exceptions to this general rule when it enacted legislation to provide indigent defendants with ex parte hearings concerning expert assistance.18 U.S.C. § 3006A(e)(1). Also, applications for subpoenas at public expense in federal criminal trials are made ex parte. Rule17(b), Fed.R.Crim.P. The Alabama legislature has created some exceptions to this general rule. For example, a trial court may enter temporary orders it deems necessary to protect an adult or a child from abuse or from the immediate and present danger of abuse, upon good cause shown in an ex parte hearing. §30-5-6; § 12-15-153, Ala. Code 1975.
Although we are mindful of the general rule and realize that few exceptions are made, we find it necessary to hold that an indigent criminal defendant is entitled to an ex parte hearing on whether expert assistance is necessary, based on the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
We find support in Ake, where the Supreme Court held that "when the defendant is able to make an ex parte threshold showing that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." 470 U.S. at 82-83, 105 S.Ct. at 1096. The Supreme Court's holding providing for expert psychiatric assistance for indigents, as set out in Ake, arises from an earlier case regarding indigents, where it stated that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Britt v. North Carolina, 404 U.S. 226, 227,92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). An indigent defendant's access to the "basic tools of an adequate defense" is a core requirement of the due process guarantee of a fundamentally fair trial. Ake, 470 U.S. at 77, 105 S.Ct. at 1093.
Requiring an indigent defendant to prematurely disclose evidence in a hearing where the state is present encroaches on the privilege against self-incrimination, which applies at all stages of a criminal proceeding. The privilege against self-incrimination "does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." Maness v. Meyers, 419 U.S. 449, 461,95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975).
There should be equality between "indigents and those who possess the means to protect their rights." United States v.Tate, 419 F.2d 131 (6th Cir. 1969). An indigent defendant should not have to disclose to the state information that a financially secure defendant would not have to disclose. InUnited States v. Meriwether, 486 F.2d 498, 506 (5th Cir. 1973), the court stated:
 "The names of witnesses to be called by the defendant could easily aid the government in determining the strategy the defendant plans to use at trial. The government should not be able to obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not able to do so in the cases of defendants able to pay witness fees. When an indigent defendant's case is subjected to pretrial scrutiny by the prosecutor, while the monied defendant is able to proceed without such scrutiny, serious equal protection questions are raised. . . ."
The Sixth Amendment right to assistance of counsel encompasses the right to effective assistance of counsel.McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441,1449 n. 14, 25 L.Ed.2d 763 (1970). This right includes access to expert witnesses where it is appropriate. United States v.Wright, 489 F.2d 1181, 1188 n. 6 (D.C. Cir. 1973). Disclosure of the defense's trial strategy would impair the indigent defendant's right to effective assistance of counsel.
Looking to what other states have done with regard to this issue, we note that the legislatures in California, Kansas, Minnesota, Nevada, New York, South Carolina, and Tennessee have provided for an ex parte hearing when an indigent defendant has requested *Page 121 
expert assistance.[1] The courts in the following states have held that an indigent defendant is entitled to an ex parte hearing regarding expert assistance: Arkansas, Florida, Georgia, Hawaii, Indiana, Michigan, Oklahoma, Washington.[2]
The courts in Louisiana, North Carolina, and Ohio all have held that it is within the trial court's discretion as to whether an indigent defendant is entitled to an ex parte
hearing on the necessity of an expert.[3] In particular, the Louisiana Supreme Court requires an indigent defendant to show that he would be prejudiced if the hearing was not held exparte. State v. Touchet, 642 So.2d 1213, 1221 (La. 1994). We disagree with this requirement because we find no reason for first requiring an indigent defendant to show prejudice from a hearing where the state is to be a party when the right against self-incrimination, the right to effective assistance of counsel, and the right to equal protection are implicated in a hearing concerning expert witnesses needed for an adequate defense.
Three state courts have expressly held that there is no constitutional right to an ex parte hearing for an indigent defendant seeking expert assistance at public expense, i.e., that the denial of such a hearing is not a denial of equal protection or effective assistance of counsel and does not violate the privilege against self-incrimination.[4] The South Dakota Supreme Court concluded that the state should be involved when public funds are being spent. State v. Floody,481 N.W.2d 242 (S.D. 1992). However, we believe that the trial court, in an ex parte hearing, can adequately protect taxpayers from unwise expenditures of money while at the same time protecting the constitutional rights of indigent defendants.
Another issue presented in this case is whether an indigent defendant is entitled to the expert of his choosing. As stated earlier, the Supreme Court in Ake held that an indigent defendant is not entitled to a psychiatrist of his choosing, but is entitled to have a competent psychiatrist who will assist in evaluation, preparation, and presentation of the defense. In Whisenhant v. State, 482 So.2d 1225
(Ala.Crim.App. 1982), aff'd in part and remanded with directions,482 So.2d 1241 (Ala. 1983), cert. denied, 496 U.S. 943 (1990), the Court of Criminal Appeals held that there exists no constitutional right to the appointment of a private psychiatrist of a defendant's own choosing, at public expense.
Accordingly, we hold that an indigent defendant is not entitled to the expert of his particular choice, but is entitled to a competent expert in the field of expertise that has been found necessary to the defense. That is, once the court has determined that there is a reasonable probability that expert assistance would aid in the indigent defendant's defense and that the denial of such expert assistance would result in a fundamentally unfair trial, the defendant is not entitled to name the particular expert he wants.
An indigent defendant has no right to shop for an expert to contradict experts for the state. Certainly, the trial court can consider the indigent defendant's request for a particular expert. However, the trial court may choose any competent expert in that particular field of expertise who would aid the defendant in evaluation, preparation, and presentation of the defense. Similarly, an *Page 122 
indigent defendant is not entitled to legal counsel of his choice, when counsel is to be paid by public funds, but rather is entitled to competent legal representation.
The factors the trial court should consider in choosing an expert, once it is determined that expert assistance is necessary, are: (1) the number of experts available to choose from; (2) what the indigent defendant expects the expert's testimony to prove at trial or how the defendant expects the expert's testimony would aid in the defense; (3) the indigent defendant's choice of expert; (4) other competent experts available; and (5) the anticipated costs of such an expert. This list of factors is not meant to be exhaustive; the trial court may consider any other relevant information regarding experts in the particular field of expertise.
The last question we must address is whether an expert for an indigent defendant can be paid before trial. Section15-12-21(e), Ala. Code 1975, provides that within a reasonable time after the conclusion of the trial or ruling on a motion for a new trial or after an acquittal or other judgment disposing of the case, a bill for services rendered may be submitted by the clerk of the court to the comptroller for payment. We see no reason to contravene the mandate of the legislature and allow for experts aiding indigent defendants to be paid before trial. As stated earlier, an indigent defendant is not entitled to the expert of his choosing, when the expert is to be paid at public expense. Accordingly, any expert who requires payment before trial could be replaced by another person with expertise in the particular field.
To summarize: Once a defendant is found to be indigent, in order to be entitled to the assistance of an expert he must show a reasonable probability that expert assistance would aid in his defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. The indigent defendant is entitled to an ex parte hearing on whether expert assistance is necessary under the aforementioned standard. No indigent defendant is entitled, at public expense, to an expert of the defendant's choice. The trial court may choose a competent expert in the relevant field of expertise. Last, pursuant to § 15-12-21, no expert is entitled to payment before trial.
The trial court held an ex parte hearing on the question of expert assistance for Moody. However, from the information before this Court, we conclude that we must order another exparte hearing on Moody's request for experts, that hearing to be conducted in light of the considerations set out in this opinion. The hearing shall be transcribed, and the transcription should be sealed. If Moody is dissatisfied with the trial court's ruling on his request for expert assistance, he can raise that issue on appeal after the trial.
We point out that currently Moody is not represented by legal counsel and intends to act on his own behalf. At Moody's request, the trial court appointed a paralegal to aid Moody in his defense. If Moody desires to be represented by counsel, he may have counsel appointed. However, an indigent defendant who elects to represent himself is not entitled to the appointment of a paralegal. We find nothing in the Sixth Amendment right to effective assistance of counsel that includes appointment of a paralegal for an indigent who wants to proceed pro se. "When an accused manages his own defense, he relinquishes, as purely factual matter, many of the traditional benefits associated with the right to counsel." Faretta v. California,422 U.S. 806, 835, 95 S.Ct, 2525, 2541, 45 L.Ed.2d 562 (1975). Once an indigent defendant chooses to proceed pro se, he takes on responsibilities that an attorney would have had in representing him and voluntarily relinquishes some aid that may have been available to him through an attorney. DeFries v.State, 597 So.2d 742 (Ala.Cr.App. 1992), citing Owen v. State,272 Ind. 122, 396 N.E.2d 376 (1979).
Of course, an incarcerated pro se defendant is entitled to access to the courts. Bounds v. Smith, 430 U.S. 817,97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In order to guarantee the constitutional right of access, incarcerated defendants must be provided with "adequate law libraries or adequate assistance from a person trained in the law." Bounds, *Page 123 430 U.S. at 828, 97 S.Ct. at 1498. We note that nothing in the material filed by Moody alleges that he has been denied meaningful access to the courts, e.g., we find no claim that he has been denied permission to use the law library or other resources at the prison. Additionally, we note that "adequate assistance from a person trained in the law," as discussed inBounds, does not mean that each inmate gets a specially appointed paralegal. In Bounds, the Supreme Court was referring to state prison programs that may provide for inmates trained as paralegals to work under a lawyer's supervision, the use of paralegals and law students as volunteers or in clinical programs, volunteer lawyer programs operated through bar associations, and the use of full or part-time staff attorneys to aid inmates in handling their cases.
Because there was some question as to whether the trial court could appoint a paralegal to assist Moody, Moody's paralegal may be entitled to payment for work done before the original mandamus petition was granted on April 19, 1996, under the common law theory of quantum meruit. It would be within the trial court's discretion to allow such payment if the paralegal can substantiate her claim.[5] Also, any experts who completed work for Moody pursuant to the trial court's order and have not been paid, may be paid for the work they actually did, provided that they can substantiate their claims.
The petition for the writ of mandamus is granted. A writ shall issue directing the trial court to proceed in accordance with this opinion.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
SHORES, J., recused.
[1] Cal.Penal Code § 987.9 (Deering 1985 and Supp. 1992); Kan.Stat.Ann. § 22-4508 (1990 and Supp. 1991); Minn.Stat. §611.21 (1991); Nev.Rev.Stat.Ann. § 7.135 (Michie 1991); N Y County Law § 722-c (Consol. 1992); S.C.Stat. § 16-3-26(C) (Supp. 1992); and Tenn. Code Ann. § 40-14-207(b) (1991).
[2] Wall v. State, 289 Ark. 570, 715 S.W.2d 208 (1986); Clark v.State, 467 So.2d 699 (Fla. 1985); Brooks v. State, 259 Ga. 562,385 S.E.2d 81 (1989), cert. denied, 494 U.S. 1018,110 S.Ct. 1323, 108 L.Ed.2d 498 (1990); Arnold v. Higa, 61 Haw. 203,600 P.2d 1383 (1979); Stanger v. State, 545 N.E.2d 1105
(Ind.App. 1989); People v. Loyer, 169 Mich. App. 105,425 N.W.2d 714 (1988); State v. Newcomer, 48 Wn. App. 83,737 P.2d 1285 (1987).
[3] State v. Touchet, 642 So.2d 1213 (La. 1994); State v. Ballard,333 N.C. 515, 428 S.E.2d 178, cert. denied, 510 U.S. 984,114 S.Ct. 487, 126 L.Ed.2d 438 (1993); and State v. Peeples,94 Ohio App.3d 34, 640 N.E.2d 208 (1994), aff'd, 74 Ohio St.3d 153, 656 N.E.2d 1285 (1995).
[4] State v. Apelt, 176 Ariz. 349, 861 P.2d 634 (1993), cert. denied, ___ U.S. ___, 115 S.Ct. 113, 130 L.Ed.2d 59 (1994);State v. Floody, 481 N.W.2d 242 (S.D. 1992).
[5] We reiterate that Moody is not entitled to a court-appointed paralegal who is paid by the state or a court-appointed paralegal who works on a volunteer basis.