991 So.2d 191 (2008)
Ex parte State of Alabama.
(In re Haywood HARTLEY
v.
STATE of Alabama).
1061718.
Supreme Court of Alabama.
March 14, 2008.
Judy A. Newcomb, dist. atty., and Hallie S. Dixon, asst. dist. atty., Bay Minette, for petitioner.
Tanya D. Hallford, Foley, for respondent.
PER CURIAM.
The State of Alabama petitions for a writ of mandamus directing the trial court to vacate its order requiring Hayward[1] Hartley, an incarcerated defendant, to be transported to the office of a private psychologist for a psychological evaluation. We grant the petition and issue the writ.
Hartley was arrested and subsequently indicted on charges of attempted murder, first-degree robbery, first-degree burglary, and first-degree theft of property. Hartley's bond was set at $1.5 million; he was unable to post bond, and he is currently incarcerated at the Baldwin County Corrections Center.
Hartley's family arranged for him to be evaluated by a clinical psychologist, Dr. C. Van Rosen, whose office is located in Daphne. Hartley's counsel thus filed what was styled as an "ex parte" motion with *192 the trial court to have Hartley transported from the Baldwin County Corrections Center to Dr. Van Rosen's office in Daphne for the evaluation. The motion included a letter from Dr. Van Rosen dated May 10, 2007, that stated that the facilities at the Baldwin County Corrections Center were not suited for the evaluation he had to perform on Hartley.
The trial court granted Hartley's motion and issued an order directing "Baldwin County Corrections Staff to transport Hayward Hartley to the office of Dr. C. Van Rosen at 9:00 a.m. on the 18th day of May, 2007, ... for the purpose of a mental and/or psychological evaluation and upon completion of said evaluation to return him to the Baldwin County Corrections Center on the same date." The trial court also indicated by handwriting on the typewritten order that "the corrections officer may leave [Hartley] in the custody of Dr. [Van] Rosen during the exam and return to pick [Hartley] back up."
On May 16, 2007, the transportation division of the Baldwin County Corrections Center and the Baldwin County Sheriff's Department contacted the district attorney's office (hereinafter "the State") about the transportation order. According to the State's petition, the sheriff's department was concerned that the transportation of Hartley to and from Dr. Van Rosen's office would jeopardize "the safety of the citizens of Baldwin County." The State, which had been unaware of the ex parte motion or the order allowing Hartley to be transported to Daphne, filed a motion on May 17 requesting the trial court to reconsider its order. The motion stated, in part:
"3. The State believes that [Hartley] is an extreme danger to the community. He even threatened to kill the victim at the time he was arrested for Attempted Murder, Robbery 1, Burglary 1 and Theft of Property 1. [Hartley] is under a $1.5 Million bond in this matter.
"4. [Hartley] has already proven to be a flight risk in that he fled to Mobile County and was arrested there on these charges.
"5. Because of the great security risk that [Hartley] poses to the community, multiple Deputies will be needed for his transport to Daphne. The State avers that this is an extreme burden to the taxpayers. Also, because of the danger that [Hartley] poses, the Deputies will need to stay with [Hartley], thereby undermining his confidentiality with Doctor Van Rosen.
"6. The State adamantly opposes this transport and requests a hearing."
The trial court denied the State's motion without a hearing.
The State subsequently filed a motion to stay the transportation order, and the trial court conducted a hearing on the motion. At the hearing, the State appeared with two witnesses, Brock Palmer, an investigator with the Orange Beach Police Department, and Chief Deputy Charlie Jones with the Baldwin County Sheriff's Department. According to the State, the witnesses were to testify as to the seriousness of the charges against Hartley and the alleged threat he posed to the community. The trial court, however, did not allow the witnesses to testify, and it denied the State's motion to stay and upheld its previous order. The facts before us do not indicate why the trial court did not allow the State's witnesses to testify.
The State then filed in the Court of Criminal Appeals a petition for a writ of mandamus, presumably seeking the same relief it now seeks from this Court. The Court of Criminal Appeals denied the petition, by an order. Hartley v. State (No. CR-06-1466, August 23, 2007), ___ So.2d ___ (Ala.Crim.App.2007) (table). The *193 State then filed the petition for the writ of mandamus now before this Court.
The standard governing the availability of a writ of mandamus as a means for reviewing a trial court's exercise of its discretion has been stated as follows: "`"In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case of abuse."'" Ex parte Flexible Prods. Co., 915 So.2d 34, 40 (Ala.2005) (quoting Ex parte Monsanto Co., 794 So.2d 350, 351-52 (Ala.2001), quoting in turn Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989)). Our inquiry thus focuses on whether, in issuing the transportation order, the trial court exceeded its discretion.
The State maintains that Hartley is a dangerous inmate and that he poses a danger to the community when he is not confined in a secure facility. The State also contends that it should have been able to present the testimony of its two witnesses, Chief Deputy Jones and Investigator Palmer. The State argues that the portion of the trial court's order stating that "the corrections officer may leave [Hartley] in the custody of Dr. [Van] Rosen during the exam and return to pick [Hartley] back up" demonstrates the trial court's "obvious lack of understanding as to the danger [Hartley] poses."
Because its witnesses were not allowed to testify, the State has submitted to this Court with its petition an affidavit of Chief Deputy Jones and the investigative summary prepared by Investigator Palmer. These materials describe Hartley's allegedly dangerous nature, the security precautions employed regarding Hartley, the nature of the crimes he is alleged to have committed, and the alleged threats he made against the victim.
"Generally, most hearings should be held in the open because of the concern that one be given notice and an opportunity to be heard." Ex parte Moody, 684 So.2d 114, 120 (Ala.1996). In this case, the facts before us indicate that the order for transportation was not sealed. The State learned of the order for transportation and challenged it; the trial court scheduled a hearing on the State's challenge but did not allow the State's witnesses to testify. The State's evidentiary submissions to this Court regarding the offense and Hartley's arrest would appear to support the State's arguments that Hartley is violent, that he is an escape risk, and that he poses a threat to the community. Given that the sheriff's department had concerns that potential security risks were not adequately addressed by the trial court in issuing the order, we conclude that the trial court exceeded the scope of its discretion in refusing the State the opportunity to present its witnesses. Therefore, the trial court is directed to hold a hearing on whether Hartley may be safely transported and at that hearing to allow the State to present its evidence.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, WOODALL, PARKER, and MURDOCK, JJ., concur.
STUART, J., concurs specially.
SMITH and BOLIN, JJ., concur in the result.
COBB, C.J., recuses herself.
STUART, Justice (concurring specially).
I fully concur with the main opinion. I write specially to emphasize that this Court's decision in Ex parte Moody, 684 So.2d 114 (Ala.1996), with regard to the right of a defendant to an ex parte hearing *194 to determine whether the defendant is entitled to expert assistance at public expense is limited to an indigent defendant. The specific issue addressed in Moody was "whether an indigent defendant requesting an expert witness [at public expense] is entitled to an ex parte hearing on that request." 684 So.2d at 119 (emphasis on "indigent" added). We concluded in Moody that "an indigent criminal defendant is entitled to an ex parte hearing on whether expert assistance is necessary, based on the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." 684 So.2d at 120 (emphasis on "indigent" added). An ex parte hearing is necessary in such a case because an indigent defendant may be required to reveal incriminating evidence and/or defense strategy in order to show "a reasonable probability that an expert would aid in his defense and [must show that] a denial of an expert to assist at trial would result in a fundamentally unfair trial." 684 So.2d at 119 (quoting Dubose v. State, 662 So.2d 1189, 1192 (Ala.1995), citing in turn Moore v. Kemp, 809 F.2d 702 (11th Cir.1987)). Thus, our holding in Moody that a defendant has a right to an ex parte hearing when requesting expert assistance applies only to indigent defendants and to the issue whether it is necessary to provide an expert at public expense for the indigent defendant to have an adequate defense.
The concern that incriminating evidence or defense strategy may be revealed at the hearing is not relevant when the hearing concerns security or transportation arrangements and the public's safety is at issue.
The materials before us indicate that Hartley is not an indigent defendant and that he was not seeking an expert witness at public expense; therefore, this Court's holding in Moody is not applicable to his case.
NOTES
[1] Hartley's first name appears as both "Hayward" and "Haywood" in the materials before us.